UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAYLOR LOHMEYER LAW FIRM PLLC, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| *v.* | § | Civil Action No.  SA-18-CV-1161-XR |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Respondent*. | § | |

**ORDER**

On this date, the Court considered the status of this case. On November 6, 2018, Petitioner Taylor Lohmeyer Law Firm PLLC filed a petition to quash an IRS summons. Docket no. 1. The United States, as Respondent, filed a motion to dismiss this petition to quash and a counter-petition to enforce the summons. Docket no. 4. At the April 11 status conference, the parties agreed, for efficiency's sake, to proceed only as to the counter-petition to enforce. Having considered the original petition (docket no. 1), the counter-petition (docket no. 4), the Firm's response (docket no. 5), the Government's reply (docket no. 7), the Firm's supporting memorandums (docket nos. 8, 9), and the Government's responses to these memorandums (docket nos. 11, 12), the Court GRANTS the Government's counter-petition to enforce.

**BACKGROUND**

This case is about the Internal Revenue Service's attempt to seek by John Doe summons certain information related to the clients of Taylor Lohmeyer Law Firm PLLC ("the Firm"), including the clients' names. The Firm is the Kerrville estate-planning practice of Fred Lohmeyer and, until his death in 2016, John Taylor. The IRS previously audited a taxpayer (Taxpayer-1) who used the Firm to "set up foreign accounts, foreign trusts, and foreign

1

corporations to avoid paying U.S. taxes for which he was liable." Docket no. 4 at 7. This audit led to a closing agreement with Taxpayer-1 "admitting an unpaid income tax liability of over $2 million from unreported income of over $5 million for the 1996 through 2000 years, as well as additional penalties (including civil fraud penalties) from foreign entities set up and managed by Taylor Lohmeyer." *Id.*

Here, the IRS seeks names of and other information related to the Firm's clients between 1995-2017 to investigate the tax liability of those who used the Firm to "create and maintain foreign bank accounts and foreign entities that may have been used to conceal taxable income in foreign countries." *Id.* at 8. The Government undertakes this investigation, it states, because offshore tax evasion usually involves a foreign financial account and an offshore entity controlled by nominee directors to hide the taxpayers' beneficial ownership. *Id.* at 7.

Before this John Doe summons could issue, the Government was required to make certain showings in an *ex parte* proceeding before this Court. *See* 5:18-MC-1046-XR. On October 15, 2018, the Court found that the Government had made these showings. On November 6, 2018, the Firm brought this suit as a petition to quash the summons, and on February 13, 2019, the Government brought the motion to dismiss the petition to quash and counter-petition to enforce that is now before the Court. The Government met its burden at the *ex parte* proceeding and attempts to meet its burden here with the declarations of Revenue Agent Joy Russell-Hendrick.

## DISCUSSION

### I.     Applicable Law

Before a third-party John Doe summons like this one can be issued, there must be a court proceeding in which the United States establishes that:

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

26 U.S.C. § 7609(f).

The Court, in ordering service of the summons in the earlier *ex parte* proceeding, made these three findings. Importantly, these findings are not subject to challenge in an enforcement proceeding—they relate only to issuance of the summons. *See United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983) ("[T]he three factual determinations that a district court must make under section 7609(f) before issuing its ex parte authorization of a John Doe summons may not be challenged. There is, therefore, no reason why these factual determinations should be subject to de novo review at an enforcement hearing.")

Then, to enforce the summons, the Government's burden "is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985). "The government's minimal burden at this stage can be fulfilled by a 'simple affidavit' by the IRS agent issuing the summons." *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001). Under the Supreme Court's decision in *United States v. Powell*, 379 U.S. 48, 57-58 (1964), the Government must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information which may be relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the Internal Revenue Code.

If the Government makes out its case, the burden shifts to the Firm to challenge the case on "any appropriate ground." *Powell*, 85 S.Ct. at 255. Thus, the burden shifts to the Firm: "(1) to show the Government has failed to meet its burden under *Powell*; (2) to assert and prove that enforcement would constitute an abuse of the court's process; or (3) to show any other appropriate ground under which the summons should not be enforced." *United States v. Battle*, 213 F. App'x 307, 309–10 (5th Cir. 2007). "An abuse of the judicial process occurs when the summons is sought for an 'improper purpose, such as . . . harass[ing] the taxpayer, . . . put[ting] pressure on him to settle a collateral dispute' or obtaining information solely for a criminal prosecution under the guise of a civil liberty investigation." *Johnson v. United States*, 2006 WL 505844, at *2 (W.D. Tex. Jan. 3, 2006) (citing *Mazurek*, 271 F.3d at 230-31). Contrary to the IRS's minimal burden, Petitioner's burden to rebut a *Powell* prima facie case is "heavy". *Id.*

## II.    Application

Here, the Government makes out a *prima facie* case and the Firm, despite its arguments regarding abuse of process and attorney-client privilege, does not meet its "heavy" rebuttal burden.

### a.  The Government's *prima facie* case under *Powell*

The U.S. makes out its *prima facie* case using the affidavit of Revenue Agent Joy Russell-Hendrick. Docket no. 4-1. First, she states the legitimate purpose stems from the widespread practice of using offshore entities and foreign financial accounts for offshore tax evasion. And because the IRS's evaluation of Taylor Lohmeyer revealed the Firm played a key role in helping taxpayers operate offshore, she states, the IRS began investigating the identity and correct income tax liability of those who used the Firm to hide unreported taxable income. Second, she states the summons seeks information relevant to this purpose because it seeks

records that may reveal the identities and international activities of certain clients of the Firm between 1995 and 2017. Third, the IRS does not have this information, and fourth, Russell-Hendrick states all required administrative steps were taken. Given the Government's "slight" burden, which can be met by "simple affidavit," the Government easily makes out a *prima facie* case.

### b. The Firm's attempts to meet its 'heavy' burden

The burden then shifts to the Firm to rebut this case, show an abuse of process, or argue any appropriate ground. Generally, the Firm's arguments throughout the proceeding center on inaccuracies it perceives in the narrative presented in the Russell-Hendrick affidavit used to support issuance of the summons. The Court interprets this both as an attack on the findings made in the *ex parte* proceeding and an argument that the Government abused the Court's process in that proceeding.

As stated above, however, the affidavit in question is only relevant to the necessary findings for issuing a John Doe summons, and the Court already found that the government met its burden. The Firm cannot now challenge those findings. Even if it could, the affidavit amply justifies the necessary findings. There is clearly an ascertainable group (firm clients between 1995 and 2017) and the information sought (these clients' identities) is not readily available elsewhere. As to the remaining required finding, a central argument in the Firm's response—that there is no meaningful connection between the Firm's representation of these clients and the IRS's enforcement action against one client—is best interpreted as challenging the reasonable basis for believing that this group may have failed to comply with internal revenue law.

But the bar for "reasonable basis" is not high and the affidavit of Russell-Hendrick from the *ex parte* proceeding establishes a reasonable basis. She details her conclusion that Taxpayer-

1 concealed his connection to offshore structures—for which Taxpayer-1 remained the beneficial owner—created under the advice of the firm. Taxpayer-1 entered an agreement with the IRS in June 2017, admitting that Taxpayer-1 owned all assets owned by the offshore trusts and earned over $5 million in unreported income between 1996 and 2000. Taxpayer-1 accepted liability for civil fraud penalties and penalties for failing to file the required forms for reporting foreign income.

Russell-Hendrick then states the basis for her opinion that the Firm provided similar advice to other clients. Among other pieces of evidence, she states that in an interview with John Taylor, former partner of the firm, Taylor estimated that he structured offshore entities for tax purposes for 20 to 30 clients between the 1990s and early 2000s. Russell-Hendrick states in part that:

> Taylor Lohmeyer PLLC's services to their U.S. clients, as described by Taxpayer-I and Taylor himself, are the kinds of activities that, in the experience of the IRS, are hallmarks of offshore tax evasion, including: (1) structures of offshore trusts with compliant trustees, and foundations and anonymous corporations managed by nominee officers and directors, (2) the use of "straw men" to contribute nominal funds to foreign trusts to create the false appearance that such trusts have foreign grantors, and (3) the concealment of beneficial ownership of foreign accounts and assets in jurisdictions with strong financial secrecy laws and practices.
>
> The information obtained by the IRS and discussed in this Declaration suggests that the still-unknown U.S. taxpayers doing business with Taylor Lohmeyer PLLC may not have reported their offshore accounts, entities, or structures. Instead, they have likely relied on the assistance of Taylor, and the fact the structures are hidden offshore to support a decision not to report the existence of those entities and accounts, expecting that the IRS would not discover the accounts, omitted income, and/or the existence of the entities.

18-MC-1046, docket no. 1-2 at 37. Thus, assuming for argument that the Firm could challenge the *ex parte* proceeding at this stage, issuance was proper.

Next, the Firm argues that the Russell-Hendrick affidavit in the *ex parte* proceeding is "replete with misrepresentations and inaccuracies demonstrating a serious abuse of the summons

process." Docket no. 1 at 4. The Firm argues these alleged misrepresentations are "cooked up . . . to support [Russell-Hendrick's] erroneous conclusion that Taylor Lohmeyer was providing illegal services to other U.S. clients." *Id.* at 9. These alleged misrepresentations are, for example, the conclusion that "[o]n the advice of Taylor that no income was reportable from the offshore arrangement, Taxpayer-1 never told his return preparer about the offshore structure or the incentive fees." *Id.* at 8 (other allegedly unsupported representations are presented on pages 4-11). The Firm contends Russell-Hendrick cites no source to support her inference, and argues that had Taxpayer-1 followed the advice given "there would have been a lawful position that no income was reportable . . . [but] the taxpayer obviously did not follow the lawful advice he followed." *Id.*

Further, the Firm argues that Lohmeyer "has reviewed his remaining client files and has determined that they are distinguishable from Taxpayer-1" because unlike with Taxpayer-1, "there is no evidence that any of the remaining taxpayers disregarded Taylor Lohmeyer's advice regarding the proper structure and maintenance of foreign grantor trusts." *Id.* at 11.

All told, the Firm argues the alleged misrepresentations and the fact that the remaining clients are distinguishable from Taxpayer-1 means enforcement of the summons is an abuse of process and the first two *Powell* factors are not met. As to the *Powell* factors, these arguments do not rebut the government's showing that investigating offshore tax evasion is a legitimate purpose and that these records may be relevant to that purpose. As to abuse of process, the Firm first states "we believe that the Court was actively misled during the *ex parte* proceeding by false or misleading misrepresentations made in a supporting declaration," docket no. 1 at 1 n.1, but it then states "[w]e do not necessarily allege that the government is acting with sinister motive," *id.* at 11 n.4. This does not meet the "heavy" burden, if alleging abuse of process, to show an

improper purpose like harassing the taxpayer or pressuring the taxpayer to settle a collateral dispute.

Next, the Firm argues that the information sought by the summons is protected by attorney-client privilege. Attorney-client privilege is a ground courts have recognized as a means of rebutting a prima facie case under *Powell. See United States v. El Paso Co*., 682 F.2d 530, 538 (5th Cir. 1982) (citing *Powell* and stating that El Paso Co., in opposing enforcement of an IRS summons, bore the burden of establishing its defense that attorney-client privilege protects the information sought).

The attorney-client privilege covers confidential communications "for the purpose of obtaining legal advice." *El Paso Co*., 682 F.2d 530, 538 (5th Cir. 1982). Although privileges pertaining to documents can be asserted in an enforcement proceeding, the party seeking to assert the privilege must allege its applicability with specificity as to each document. *Id.* at 539 ("[W]e have made clear that the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents.").

"It is well established that '(t)he identity of a client is a matter not normally within the privilege.'" *In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 204 (5th Cir. 1981) (quoting *Frank v. Tomlinson*, 351 F.2d 384, 384 (5th Cir. 1965)). "Despite the general rule," under a "limited and rarely available" exception, "an attorney must conceal even the identity of a client, not merely his communications." *In re Grand Jury Proceedings ("Jones")*, 517 F.2d 666, 671 (5th Cir. 1975). The exception applies "when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." *In re Grand Jury Proceedings*, 680 F.2d 1026, 1027 (5th Cir. 1982).

In *Jones*, the court stated that "[t]he cases applying the exception have carved out only a limited and rarely available sanctuary, which by virtue of its very nature must be considered on a case-by-case basis. It could hardly be otherwise, since the purpose of privilege to suppress truth runs counter to the dominant aims of the law." *Jones*, 517 F.2d at 672; *see generally DeGuerin v. United States*, 214 F. Supp.2d 726, 735-36 (S.D. Tex. 2002). ("If revelation of a client's identity would also reveal a privileged communication, both the identity and the communication are privileged.").

The Firm argues this exception applies because the summons seeks the identities based on the advice and services sought from the firm, and "when the specific requests are combined with the client identities (not to mention the related client files), the net effect is to identify individuals as well as the specific services and structures they were provided." Docket no. 5 at 14. The Firm relies on an IRS enforcement case from the Third Circuit, *United States v. Liebman*, 742 F.2d 807 (3d Cir. 1984), in which client identities were privileged. This was because the government was already aware of the advice the law firm had provided its clients (that certain fees were tax deductible), so it "falls within the situation where so much of the actual communication had already been established, that to disclose the client's name would disclose the essence of a confidential communication." Docket no. 5 at 13 (quoting *Liebman*, 742 F.2d at 809).

The Government distinguishes *Liebman* because in that case the summons sought the identities of those clients who had been advised that they could deduct, rather than amortize, certain fees. Docket no. 7 at 10. The Government argues this situation is distinct because the client class is defined not by receipt of certain legal advice, but by whether the Firm "acquired or formed any foreign identity, opened or maintained any foreign financial account, or assisted in

the conduct of any foreign financial transaction on behalf of the identified class." *Id.* Thus, "for Taylor Lohmeyer's blanket 'attorney-client privilege' assertion to arguably apply, it would have to show that all members of the identified class received the same privileged communications as Taxpayer-1, and that by disclosing the identities of the identified class, it would be tantamount to disclosing the privileged communications." *Id.*

Separately, the U.S. argues the summons does not seek privileged information because it does not seek legal advice and it was tailored to avoid the attorney-client privilege. *Id.* at 6 (citing, e.g., *Seibu Corp. v. KPMG LLP*, 2002 WL 87461 (N.D. Tex. 2002) ("Where an attorney is functioning in some other capacity—such as an accountant, investigator, or business advisory—there is no privilege.") (applying Texas law) (collecting cases)). In an enforcement proceeding, the party seeking to assert privileges pertaining to documents must allege specifically how the privilege applies to each document. *El Paso Co.*, 682 F.2d at 539 (5th Cir. 1982). The Government contends the Firm must produce a privilege log with specific objections to the summons' requests, but the Firm has not done so.

Instead, at the status conference in this case, the Firm sought and obtained leave to file an additional memorandum on the attorney-client privilege issue. This memorandum includes a supporting declaration from Fred Lohmeyer that purportedly details "the types of legal services the firm provides, the types of structures employed by the firm's clients, and the nature of the firm's relationships with its clients." Docket no. 8 at 7. The Firm also provided "a sampling of redacted client billing records further showing . . . that the services were legal in nature, and that the legal services received by the clients were similar to the legal services received by Taxpayer-1." *Id.* Finally, the Firm again argues that the client identities are privileged because "so much is already known about the reasons the clients sought advice from the law firm and the types of

services that the law firm provides that the government is already aware of the confidential communications between the clients and the law firm." *Id.* at 9.

Here, the Firm's attorney-client privilege arguments do not meet its burden to rebut a *Powell* showing, in large part because the Firm makes a blanket assertion and does not produce a privilege log or similar device. *See, e.g., Hanse v. United States*, 2018 WL 1156201, at *6 (N.D. Ill. Mar. 5, 2018) (concluding that a "blanket assertion of privilege," which did not properly assert attorney-client privilege on a document-by-document basis, was "insufficient to challenge the validity of the IRS summons"). These additional filings do not persuade the Court to the contrary. The sample billing records only show, at most, that some services were legal in nature and protected by privilege, but this does not show that the 32,000 responsive documents the Firm claims to have are *all* privileged. Likewise, the new Lohmeyer declaration provides only generalities that do not show the IRS already knows so much that disclosure of client identities falls in the narrow exception to the general rule that identities are not privileged.

Ultimately, because blanket assertions of privilege are disfavored, the Firm bears a heavy burden at this stage, and the Firm relies only on a narrowly defined exception to the general rule that identities are not privileged, the Firm does not carry its burden. As the Government suggests, "[u]pon this Court ordering enforcement of the summons, if Taylor Lohmeyer wishes to assert any claims of privilege as to any responsive documents, it may then do so, provided that any such claim of privilege is supported by a privilege log which details the foundation for each claim on a document-by-document basis." Docket no. 7 at 8. Whether certain documents fit the *Liebman* argument the Firm advances is better decided individually or by discrete category.

**CONCLUSION**

Accordingly, the Court GRANTS the Government's counter-petition to enforce its John Doe summons. The Court will retain jurisdiction in this case pending any challenges by the Government of the Firm's privilege log, should the Firm produce one.

It is so ORDERED.

SIGNED this 15th day of May, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE