IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAYLOR LOHMEYER LAW FIRM, PLLC, | § § § § | |
| *Petitioner,* | § § | Case No. 5:18-CV-01161-XR |
| v. | § § | Honorable Xavier Rodriguez |
| UNITED STATES OF AMERICA, | § § § | U.S. District Judge |
| *Respondent.* | § § | |

**TAYLOR LOHMEYER LAW FIRM PLLC'S REPLY
IN SUPPORT OF ITS MOTION FOR STAY PENDING APPEAL**

TO THE HONORABLE JUDGE RODRIGUEZ:

Taylor Lohmeyer Law Firm PLLC files this reply in support of its motion to stay the order granting United States of America's counter-petition to enforce the summons (Docket No. 15) pending Taylor Lohmeyer's appeal of that order to the United States Court of Appeals for the Fifth Circuit.

**A.    A blanket assertion of privilege is proper in this case.**

This case exemplifies the narrow circumstance in which a "blanket" assertion of privilege is appropriate. The government claims to know the privileged legal advice Taylor Lohmeyer provided to its clients,[1] it just does not know who received the advice. So, it asked the Court for permission to issue the summons to, in its words, obtain "substantial evidence regarding the identity of the U.S. taxpayers" who received the advice. Docket 8-4 at 31; *see also* Docket No. 4-3. All documents responsive to the summons necessarily reveal the law firm's clients'

---

[1] According to Russell-Hendrick's sworn declaration, Taylor Lohmeyer advised its clients that they "could borrow money from the offshore structure without U.S. tax obligations" and that "no income was reportable from the offshore arrangement." Docket 8-4 at 5-6, 16, and 13.

identities—information that is privileged given the government's knowledge of the advice they received. *See DeGuerin v. United States*, 214 F.Supp.2d 726, 737 (S.D. Tex. 2002) ("[t]he law in the Fifth Circuit is clear," "[i]f revelation of a client's identity would also reveal a privileged communication, both the identity and the communication are privileged"); *see also United States v. Liebman*, 742 F.2d 807, 810 (3rd Cir. 1984) (the "identity, when combined with the substance of the communication . . . that is already known, would provide all there is to know about a confidential communication between the taxpayer-client and the attorney"). Because this case is indistinguishable from *Leibman*, which the Fifth Circuit has cited favorably,[2] Taylor Lohmeyer is likely to prevail, or, at a minimum, has a substantial case on the merits, and thus a stay pending appeal is appropriate.

In opposing Taylor Lohmeyer's request for a stay, the government argues that success on appeal is unlikely because "[t]he Fifth Circuit disfavors blanket assertions of attorney client privilege." Doc. No. 23 at 3. While that is true in some contexts, it is not true in this particular context—where the purpose of the document request is to ascertain the identities of clients who received privileged advice that the government says it already knows. Thus, all of the cases the government cites are easily distinguishable.

The government cites *United States v. Davis*, 636 F.2d 1028 (5th 1981), where the IRS subpoenaed records of two lawyers that had performed certain work for a suspected drug trafficker that the IRS suspected failed to pay taxes. Importantly, documents responsive to the subpoena included privileged and non-privileged material. *See id.* at 1043-44. However, the attorneys objected to all categories, and "made no attempt to demonstrate in any specific way that any particular documents fell within the ambit of the privilege." *Id.* at 1044, n. 20. The

---

[2]   *See In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 913 F.2d 1118, 1125 n. 11 (5th Cir. 1990).

2

district court overruled the blanket assertion of privilege. However, recognizing that the summons likely included privileged information, the court of appeals reversed and remanded for an in camera inspection. *Id.* at 1044.

*Davis* does not support the government's position for at least two reasons. First, the IRS knew the identity of the attorneys' client and specifically sought privileged and non-privileged information, necessitating a document-by-document review. Here, the summons was for the stated purpose of ascertaining the identities of clients who received privileged advice already known by the government. Given the government's admission that the summons is being used to obtain "substantial evidence regarding the identity of the U.S. taxpayers" who received the law firm's advice, all of the documents are necessarily privileged, rendering a document-by-document review pointless. Second, and perhaps more importantly, the district court in *Davis granted* the attorneys' request for a stay pending appeal. *Id.* at 1034.

Next, the government cites *United States v. Finley*, 434 F.2d 596 (5th Cir. 1970), where the IRS established the income tax liability of an attorney's client. In an attempt to locate assets to satisfy the tax liability, the IRS issued a summons to the attorney, compelling him to appear and testify about a $12,000 payment he made to this client—which was "unaffected by and unimpressed with the traditional indicia of the attorney-client relationship." *Id.* The attorney, however, refused to testify *about anything*, claiming that anything he would say would be privileged. Not surprisingly, the district court and the Fifth Circuit rejected his privilege claim.

*Finley* does not support the government's position because, once again, the IRS knew the identity of the attorneys' client and specifically sought information that was not privileged. Here, the summons was for the stated purpose of ascertaining the identities of clients who received

3

privileged advice already known by the government. All of the identity documents in this case are categorically privileged.

Next, the government cites *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), where the IRS issued a summons for El Paso's "tax pool liability analysis"—documents that included privileged information prepared by attorneys and non-privileged information prepared by ordinary accountants. El Paso asserted a blanket attorney-client privilege as to all documents. The Fifth Circuit explained that, under the circumstances, a blanket assertion of privileged is improper. *See id.* at 541.

*El Paso* does not support the government's position. First, the case did not involve a summons issued to a law firm. Second, as with all of the cases cited by the government, the IRS knew the identity of the taxpayer and was not seeking the documents to draw a link between privileged attorney-client communications and the identities of the recipients of the information. Third, as in *Davis*, the court held that a stay pending appeal was appropriate "[b]ecause of the importance and the novelty of the issues raised with respect to the IRS's summons power." *Id.* at 533.

The government also cites *DeGuerin v. United States*, 214 F.Supp.2d 726, 737 (S.D. Tex. 2002), for the proposition that a privilege log or similar device must be submitted to sustain a claim of privilege. A closer analysis of that case reveals precisely why that concept does not apply in this case. In *DeGuerin*, the law firm had been paid in excess of $10,000 in cash from several clients, prompting the firm's legal obligation to report the identity of the payer to the IRS by submitting IRS Form 8300. The firm withheld client names, resulting in the IRS assessing penalties against the firm. *Id.* at 728. In subsequent litigation, the IRS was not seeking to compel the firm to identify the clients; nor was there any suggestion that the IRS was going to

4

investigate the clients for a tax deficiency. Rather, the litigation centered on whether the penalties were properly assessed—an inquiry that required the court to first decide whether firm's failure to identify the clients on the form was appropriate under the attorney client privilege.

In determining whether the names were privileged, the court recognized, consistent with *Liebman*, that "[t]he law in the Fifth Circuit is clear," "[i]f revelation of a client's identity would also reveal a privileged communication, both the identity and the communication are privileged." *Id.* at 737. The rule did not apply, however, because there was no evidence of a privileged communication that would be revealed if the names were disclosed. *Id.* ("[f]rom these facts it is not clear what privileged communication would have been disclosed had Plaintiffs included the fee-paying benefactor's name on a Form 8300"). Therefore, the court determined that it "must proceed to analyze whether the Plaintiffs intentionally disregarded their filing obligations, and, if so, whether Plaintiffs had reasonable cause for doing so." *Id.* at 738.

Thus, in *DeGuerin,* the attorney-client privilege did not apply because the nature of a confidential communication was neither known nor being investigated. Therefore, disclosing the client's identity would not reveal a privileged communication. In contrast, Russell-Hendrick swore in her declaration that Taylor Lohmeyer advised its clients that they "could borrow money from the offshore structure without U.S. tax obligations" and that "no income was reportable from the offshore arrangement." Docket 8-4 at 5-6, 16, and 13. She also swore that the IRS wants to issue the summons to obtain "substantial evidence regarding the identity of the U.S. taxpayers" who received that advice. Docket 8-4 at 31. Consistent with *DeGuerin's* recognition that "[i]f revelation of a client's identity would also reveal a privileged communication, both the

identity and the communication are privileged," the identity documents the government seeks are all privileged. *DeGuerin*, 214 F.Supp.2d at 737.

**B.     The government's attempt to distinguish *Liebman* is in vain.**

The government maintains that *Liebman* is not applicable because (i) in this case, unlike *Liebman*, the government is only seeking "transactional documents," not documents containing attorney client privileged information, (ii) this Court did not rule that *Liebman* is inapplicable, and (iii) *Liebman* is factually distinguishable. Doc. No. 23 at 5-6. The government is wrong.

With respect to the first argument, the fact that the government requested "transactional documents" to discover the client names does not distinguish *Liebman*, it emphasizes the similarities in the cases. In *Liebman*, the government was aware of the advice the firm gave to its clients in connection with transactional work, but it did not know the clients' identities. So, the government requested all "books, records, papers" that reveal the clients' identities—a request that plainly encompasses the transactional documents. While such transactional documents may not ordinarily be privileged, they were deemed privileged given the reason the government requested them—to ascertain the identities of the recipients of the privileged advice. This case presents the identical situation.

With respect to the second argument, the Court deviated from *Liebman* by requiring a privilege log and a document-by-document review. Such a review is unnecessary and contrary to *Liebman* because, by virtue of the reason the government requested the transactional documents—to ascertain the identities of the law firm clients who received known confidential advice—they are all privileged. *See Liebman,* 742 F.2d at 810 ("If appellants were required to identify their clients as requested, that identity, when combined with the substance of the

6

communication as to the deductibility that is already known, would provide all there is to know about a confidential communication between the taxpayer-client and the attorney").

With respect to the third argument, the government maintains that *Liebman* is distinguishable because (i) the government in this case does not know the confidential advice, and (ii) after learning the clients' identities, it "would still need further analysis and factual development to determine whether any tax consequences are appropriate." Doc. No. 23 at 7. However, Russell-Hendrick's sworn declaration describes the *precise* legal advice that the government believes the law firm gave to its clients that used off shore accounts, giving rise to its purported "reasonable basis to conclude" other firm clients followed identical advice. The government's current positon that it is unaware of the advice calls into question the veracity of the declaration.

Further, the notion that the government would need additional analysis and factual development after discovering the identities of the recipients of the confidential advice to determine whether a tax consequence is appropriate does not distinguish *Liebman*, it, once again, underscores why the cases are similar. As the court in that case observed, "it is by no means clear that all the clients whose identities would be revealed did take the deduction." *Liebman,* 742 F.2d at 810, n.4. Clearly, the government in that case would need further investigation as well.

C. **Taylor Lohmeyer will suffer irreparable injury without a stay.**

The government argues that Taylor Lohmeyer will not be irreparably injured without a stay because it can simply return the documents if Taylor Lohmeyer prevails on appeal. Doc. No. 23 at 9. However, handing over documents right now on the condition that they are returned after an appeal will not adequately protect the law firm or its clients. The identities of the clients will have been disclosed and there would be no effective way for the court to adequately protect

the law firm and its clients from future audits and assessments by the IRS. Without a stay, the procedure for discovering this privileged information will be well underway without a stay.

Additionally, requiring the law firm to review and redact 32,000 documents in a way that avoids disclosure of clients' identities pending appeal would be a time consuming, costly, useless, and unnecessary procedure. Such a requirement exceeds the IRS' summons authority and violates the *Powell* requirement that a summons not be used for harassment. Moreover, each individual client will need to be involved and may have to hire independent counsel to intervene in the matter. As *in El Paso*, a stay is appropriate "[b]ecause of the importance and the novelty of the issues raised with respect to the IRS's summons power." *El Paso*, 682 F.2d at 533.

D.  **Neither the government nor the public interest will not suffer by harmed by a stay.**

The government has not established that it or the public will be harmed without a stay. At best, the government suggests that it may be harmed "if" client files are not preserved. Doc. No. 23 at 10. However, all files to which Taylor Lohmeyer has access are being preserved, and the government presents no evidence suggesting otherwise.

With regard to the argument that there will be substantial injury to the government because there is a six-year period of limitations on FBAR penalty assessments under 31 U.S.C. § 5321, that potential injury is not immediate. FBARs relating to 2013, the oldest open year, would have had a filing date of June 30, 2014. *See* Form TD F 90-22.1. The six-year period of limitations will not run those FBARs until June 30, 2020. Thus, there is no immediate harm to the government in staying the enforcement pending appeal.

## CONCLUSION

Taylor Lohmeyer Law Firm PLLC requests the Court to stay the order granting United States of America's counter-petition to enforce the summons (Docket No. 15) pending Taylor

Lohmeyer's appeal of that order to the United States Court of Appeals for the Fifth Circuit. In the alternative, Taylor Lohmeyer requests the Court to stay the appealed order long enough for the Fifth Circuit to consider a motion to stay pursuant to Federal Rule of Appellate Procedure 8, which Taylor Lohmeyer will file if this Court does not grant the motion to stay pending appeal. Taylor Lohmeyer also requests any and all general relief to which it may be entitled.

                          Respectfully submitted,

                          CHAMBERLAIN, HRDLICKA, WHITE
                          WILLIAMS & AUGHTRY

                          By: ___/s/ Steven J. Knight___
                              STEVEN J. KNIGHT
                              Texas Bar No. 24012975
                              steven.knight@chamberlainlaw.com
                              1200 Smith Street, Suite 1400
                              Houston, Texas 77002
                              Telephone: (713) 654-9603
                              Facsimile: (713) 658-2553

                              CHARLES J. MULLER III
                              State Bar No. 14649000
                              chad.muller@chamberlainlaw.com
                              LEO UNZEITIG
                              State Bar No. 24098534
                              leo.unzeitig@chamberlainlaw.com
                              112 East Pecan, Suite 1450
                              San Antonio, Texas 78205
                              Telephone: (210) 253-8383
                              Facsimile:  (210) 253-8384

## CERTIFICATE OF SERVICE

     I certify that on August 16, 2019, I electronically filed the foregoing document with the Clerk of Court through the CM/ECF system for service this day via transmission of Notice of Electronic Filing generated by ECF to all counsel of record.

                              _____/s/ Steven J. Knight_____
                              STEVEN J. KNIGHT

3456943.v1